**In re Albert H. CALDWELL, Debtor.**

**James E. HARDIN, James C. Hardin, and Ralph Majors, Plaintiffs–Appellees, Cross–Appellants,**

v.

**Albert H. CALDWELL, Defendant–Appellant, Cross–Appellee.**

**Nos. 88–6404, 88–6405.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 9, 1989.

Decided Feb. 9, 1990.

---

Ann C. Short, Herbert S. Moncier, Knoxville, Tenn., for James E. Hardin, James C. Hardin and Ralph Majors.

Wade M. Boswell, Knoxville, Tenn., for Albert H. Caldwell.

Before KRUPANSKY and NELSON, Circuit Judges, and BROWN, Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge.

For a second time this court has been asked to review a decision to grant the debtor's motion to convert his petition in bankruptcy to one under Chapter 13. The bankruptcy court ruled that the debtor, Albert Caldwell, had acted in good faith in so moving, but the district court remanded the case for reconsideration of this issue. Upon appeals by both sides, we reversed the district court and directed it to determine whether the bankruptcy court's decision in holding that the debtor acted in good faith and in granting his petition was clearly erroneous. *In re Caldwell,* 851 F.2d 852 (6th Cir.1988). The district court then concluded that the bankruptcy court was clearly erroneous in its good faith determination, and should not have allowed Caldwell's petition under Chapter 13. We agree, and affirm the district court.

I

This case arises from most unusual circumstances. The Hardins and Majors are judgment creditors following a Tennessee state court judgment against Caldwell for false arrest, malicious prosecution, and false imprisonment. The state court of appeals affirmed the judgment but reduced the amount of punitive damages; Caldwell then appealed to the Tennessee Supreme Court, which denied review. The amount of the debt now is more than $50,000, which includes compensatory and punitive damages and interest. (The bizarre story which culminated in Caldwell's bankruptcy, known locally in Knoxville as the "Santa Claus caper," makes interesting reading; *see* 851 F.2d at 855–56).

Caldwell did not attempt to pay the judgment and filed a bankruptcy petition under Chapter 7. These creditors sued to determine the status of their debt. The bankruptcy court ruled that the debt was not dischargeable because it was compensation for a willful and malicious injury. *See* 11 U.S.C. § 523(a)(6) (1979). Caldwell did not appeal.

Two months later, Caldwell moved to reopen his bankruptcy matter and convert it to Chapter 13, under which it is possible to discharge such a debt to the judgment creditors. Caldwell first proposed to pay the joint creditors $400 for 36 months, plus $6,300 from Caldwell's individual retirement account. After another hearing, the bankruptcy court approved a plan under which Caldwell agreed to pay $550 for 36 months—$19,800—to discharge the unsecured debt of slightly more than $50,000. Only the joint creditors were to be paid under this plan; Caldwell arranged to pay his secured creditor separately.[1]

Caldwell is 54 years old, in good health, and has no plans to retire. He earns slightly more than $26,000 per year after income taxes as an assistant chief of the Knoxville police department, and holds a current real estate license. Despite the judgment creditors' objections, the bankruptcy court held that Caldwell had proposed his plan in good faith and allowed him to convert to Chapter 13. Thus, by far the major portion of the debt would be discharged upon completion of the plan.

The judgment creditors appealed to the district court, arguing, among other things, that Caldwell had not acted in good faith. The district court vacated the bankruptcy court's decision and directed it to reconsider this question. Caldwell then appealed to this court.

1. Caldwell filed this secured claim on behalf of the Internal Revenue Service for $2,627.18 owed because of the early distribution of his IRA. *See* Bankr.R. 3004 (Supp.1989).

We held that it was the function of the district court to determine whether the finding of good faith was, or was not, clearly erroneous, and remanded the case for clarification. *Caldwell,* 851 F.2d at 860. On remand, the district court concluded that the bankruptcy court was clearly erroneous to have found, as a question of fact, that Caldwell had acted in good faith, and so it reversed that court and thereby denied Caldwell's application to convert to Chapter 13.

Caldwell again appeals. The joint creditors also cross-appeal, but because we agree with the district court's conclusion on the question of good faith, we do not address these other issues.

## II

 We begin with the proposition that a debt which follows a "willful and malicious injury" cannot be discharged under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 523(a)(6) (1979). But such a debt can be discharged under Chapter 13, which allows the debtor to repay his obligation over time from his disposable income. *See* 11 U.S.C. § 706(a) (Supp.1989). Chapter 13 allows the debtor to "work off" his debt rather than lose everything. *See In re McAloon,* 44 B.R. 831, 835 (Bankr.E.D.Va. 1984) (purpose of Chapter 13 is to allow debtors to reorganize rather than liquidate).

The debtor may proceed under Chapter 13, with the court's permission, if his plan meets the six criteria of 11 U.S.C. § 1325(a), and if he proposes payments which meet the requirements of 11 U.S.C. § 1325(b).[2] The most important of the six criteria of § 1325(a) for purposes of this case is that the debtor propose a plan in good faith. 11 U.S.C. § 1325(a)(3).

 Discharge under Chapter 13, though a salvation for some debtors, is a loophole for others. The good faith, or lack of it, with which the plan is proposed, distinguishes a sincere effort at repayment

from a false one. Courts should not approve Chapter 13 plans which are nothing more than "veiled" Chapter 7 plans. *In re Girdaukas,* 92 B.R. 373, 377 (Bankr.E.D. Wis.1988). A Chapter 13 plan which proposes to repay only a small portion of a debt which could not be discharged under Chapter 7 deserves "particular scrutiny." *In re Warren,* 89 B.R. 87, 95 (Bankr. 9th Cir.1988).

 The party who seeks a discharge under Chapter 13 bears the burden of proving good faith. *Girdaukas,* 92 B.R. at 376. Best efforts under 11 U.S.C. § 1325(b), without more, are not enough. *Id.* at 377. This court has suggested a twelve-part test to determine whether a debtor's Chapter 13 plan is proposed in good faith. *See In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir. 1988). Those criteria are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and,

---

**2.** These requirements are that the debtor pledge all his disposable income to repayment for at least three years, and that his unsecured credi-

tors receive at least as much under Chapter 13 as they would under Chapter 7.

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*See* 836 F.2d at 1032; *In re Estus,* 695 F.2d 311, 317 (8th Cir.1982); *Matter of Kull,* 12 B.R. 654, 659 (Bankr.S.D.Ga.1981). Like the district court, we review the bankruptcy court's determination of good faith for clear error. *Matter of Metz,* 820 F.2d 1495, 1497 (9th Cir.1987); *In re Baker,* 736 F.2d 481, 482 (8th Cir.1984).

 Rather than a good faith effort to repay this debt, we see an unbroken pattern of deceit and delay. Caldwell has evaded questions about federal tax refunds he received, and did not disclose a personal IRA containing $6,300 until the bankruptcy trustee discovered the account at his first meeting with Caldwell and the creditors. Caldwell also disclaimed any ownership in his mother's house, even though he is actually a one-quarter owner and has been since the house was bought almost a decade ago.

In addition, Caldwell removed his name from a joint credit union savings account containing at least $1,700 five months before he filed for bankruptcy, leaving his wife as sole owner. The couple had held the account jointly for 14 years, depositing money in it which had been deducted from Mr. Caldwell's paycheck.[3]

Under Chapter 13, Caldwell has proposed to pay $19,800, or only 36.6% of a $50,000 plus debt. We also note that he proposed to pay the judgment creditors for only three years, the statutory minimum. Section 1322(c) of the Bankruptcy Code requires that a debtor in Chapter 13 repay his creditors over three years, but that period can be extended, at the debtor's request and with the court's permission, to as long as five years. Caldwell could have repaid a much larger portion if he had requested to pay it over five years rather than three. He was not required to do so, but the length of repayment is a relevant indicator of the debtor's good faith, *see In re Kourtakis,* 75 B.R. 183, 188 (Bankr.E.D.Mich.

1987), and is one more factor which suggests to us that Caldwell is not sincere.

Caldwell has assiduously tried to avoid his debt to the judgment creditors. After the damage award was entered, Caldwell declared bankruptcy before he had made any attempt to pay what he owed. He tried to discharge the debt under Chapter 7, and when it was declared nondischargeable, made three monthly payments under threat of garnishment before he sought to discharge the debt under Chapter 13. Caldwell has admitted many of his assets only when forced to by the creditors, and has said that he "detests" the judgment against him. He contends that this is not bad faith. We believe it is. *See id.*

The bankruptcy court opined that it "exhaustively reviewed" the "totality of the circumstances." It stated that it considered the circumstances in which Caldwell incurred the debt, the percentage of the debt he proposed to repay, the period of repayment, Caldwell's employment and assets, and his filing under Chapter 7. It reviewed these factors in very general terms, and concluded that Caldwell had acted in good faith. The district court, with greater specificity, reviewed them and found that he had not.

 The bankruptcy court made much of the point that an attempt to discharge a debt under Chapter 13 which is not dischargeable under Chapter 7 is not conclusive evidence that the Chapter 13 plan was not made in good faith. We agree. It is not conclusively bad faith for a debtor to seek to discharge a debt incurred through his own criminal or tortious conduct, but that factor may be considered. *See Matter of Chaffin,* 836 F.2d 215, 216 (5th Cir.1988); *see also* 11 U.S.C. § 1328(a). Although we consider as a factor what Caldwell did to incur the judgment, it is what he has done since the judgment to avoid paying it that is most important. Our decision rests on much more than the fact that this debt is not dischargeable

---

3. Although Caldwell contended that his wife was always the principal owner of the account because her name was listed first in the records, Mrs. Caldwell testified that the real reason her husband removed his name was to ensure that she would still have the money after the judgment was paid.

under Chapter 7; it rests on Caldwell's unrelenting efforts to reduce the assets available to his creditors, to make only minimal payments and over the shortest possible time, and to make even those only when threatened with garnishment. The plan before us was not tendered in good faith, but was one more effort to avoid paying the judgment creditors.

As the district court observed, Caldwell is not the type of debtor whom the bankruptcy laws were meant to protect. *See also Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983) (court should determine whether debtor is attempting "to abuse the spirit of the Bankruptcy Code"). We agree that the bankruptcy court's decision that Caldwell had acted in good faith was clear error and so we AFFIRM the decision of the district court.